**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON**

**OHIO VALLEY ENVIRONMENTAL
COALITION, INC., et al.,**

        **Plaintiffs,**

        **v.**                              **CIVIL ACTION NO. 3:10-cv-836**

**INDEPENDENCE COAL COMPANY, INC., et
al.,**

        **Defendants.**

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES

## INTRODUCTION

This citizen suit under the Federal Water Pollution Control Act (hereinafter, the "CWA" or the "Clean Water Act") and the Surface Mining Control and Reclamation Act ("SMCRA") raises nine claims for relief, based on Defendants' violations of the effluent limitations in three of their West Virginia/National Pollution Discharge Elimination System ("WV/NPDES") permits, and on their failure to comply with orders of the West Virginia Department of Environmental Protection ("WVDEP") regarding the construction of selenium treatment facilities. As explained below, Plaintiffs are entitled to Summary Judgment on the question of liability raised by all nine Claims for Relief. Plaintiffs are also entitled to declaratory and injunctive relief and to the imposition of civil penalties.

## BACKGROUND

**A.    Legal Framework**

The primary environmental statute at issue in this action is the CWA, 33 U.S.C. § 1251 <u>et</u>

seq. That statute prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit. Id. § 1311(a). One such permit is a National Pollution Discharge Elimination System ("NPDES") Permit issued by the United States Environmental Protection Agency ("EPA") or an authorized state under CWA Section 402. Id. § 1342.

That section authorizes the permitting authority to issue a NPDES permit that allows the discharge of any pollutant on the condition that such discharge will comply with all CWA requirements. Id. § 1342(a). Among the limitations prescribed in NPDES permits are effluent limitations. "Effluent limitations" are "any restriction . . . on quantities, rates, and concentrations of chemical, physical, biological, and other constituents which are discharged from point sources into navigable waters . . . ." Id. § 1362(11).

EPA has authorized the State of West Virginia to administer a NPDES program to regulate the discharges of pollutants into West Virginia's waters. Permits issued under this program are known as "WV/NPDES" permits. The WVDEP administers the WV/NPDES program for the State of West Virginia.

CWA Section 505(a) authorizes citizen suits "against any person … who is alleged to be in violation of … an effluent standard or limitation under this chapter or … an order issued by … a State with respect to such standard or limitation." Id. § 1365(a). For citizen suit purposes, effluent standards or limitations include section 301(a) of the CWA and NPDES permits and their conditions. Id. § 1365(f).

This action also arises under SMCRA, the comprehensive federal statute governing the surface mining of coal. Section 506 of SMCRA prohibits surface coal mining operations without a permit from the Office of Surface Mining Reclamation and Enforcement ("OSMRE") or from

an approved state regulatory authority.  30 U.S.C. § 1256.  West Virginia administers such an approved surface mining regulatory program through the WVDEP.  See 30 C.F.R. § 948.10.

Among the performance standards mandated by SMCRA and the West Virginia Surface Coal Mining and Reclamation Act is that mining discharges "shall not violate effluent limitations or cause a violation of applicable water quality standards."  30 C.F.R. §§ 816.42 & 817.42; 38 C.S.R. § 2-14.5.b.  Furthermore, the rules promulgated under the State mining law provide that the applicable performance standards are conditions of all surface mining permits.  38 C.S.R. § 2-3.33.c.

Like the CWA, SMCRA includes a citizen suit provision.  It authorizes federal court actions to compel compliance with SMCRA against operators "alleged to be in violation of any rule, regulation, order or permit issued pursuant to [SMCRA]."  30 U.S.C. § 1270(a)(1).

## B.    Factual and Procedural Background

There are three WV/NPDES permits at issue in this motion: two held by Independence Coal Company, Inc. ("Independence"), and one held by Jacks Branch Coal Company ("Jacks Branch").

### 1.  Defendant Independence Coal Company, Inc.

Independence's unlawful discharges from two mines are a subject of Plaintiffs' motion for partial summary judgment.  The first mine is Independence's Twilight MTR Surface Mine, located in Boone and Raleigh Counties, West Virginia.  The mine is governed by Surface Mining Permit S502396.  WVDEP issued WV/NPDES Permit WV1016890 to Independence to regulate its water pollution discharged from the Twilight MTR Surface Mine.  Ex. 1 to Ps' Partial S.J. Mot.[1]  That permit limits the concentrations of pollutants in Independence's discharges into

---

[1] Unless otherwise noted, all exhibits are exhibits to the Plaintiffs' Motion for Partial Summary Judgment filed in conjunction with this memorandum.

James Creek from Outfalls 008 and 015.  Id.

The limits prescribed in WV/NPDES Permit WV1016890 restrict the selenium concentration at the subject outfalls to a monthly average concentration of 4.7 µg/l (micrograms per liter) and a daily maximum concentration of 8.2 µg/l.  As established by the discharge monitoring reports ("DMRs") that Independence submitted to WVDEP, Independence has accrued at least 184 days of violations of the selenium effluent limitations in WV/NPDES Permit WV1016890 since the selenium effluent limitations went into effect on April 6, 2010.  Ex. 2. See also Exhibit 24 (authenticating the DMRs).[2]

On or about April 5, 2007, WVDEP issued Amended Order No. 47.  In addition to setting the compliance date for selenium effluent limitations, the order required Independence to commence construction of selenium treatment facilities by October 5, 2008, and to complete such construction by April 5, 2010.  Ex. 3.  As established by WVDEP correspondence to Independence, Independence failed to comply with the mandated construction deadlines.  Ex. 4.

The second Independence mine at issue is the Red Cedar Surface Mine No. 1 in Boone County, West Virginia.  It is regulated by Surface Mining Permit S503907.  WVNPDES Permit WV1017152 limits effluent discharges into Trace Branch of Spruce Laurel Fork at Outfalls 042 and 046 and into Bull Creek of Pond Fork at Outfalls 029, 031, and 037.  Ex. 5.  The permit sets the same effluent limits for selenium as the limits prescribed in Twilight MTR Surface Mine's WVNPDES WV1016890.  As established by the DMRs that Independence submitted to WVDEP, Independence has accrued at least 353 days of violations of the selenium effluent limitations in WV/NPDES Permit WV1017152 since the selenium effluent limitations went into

---

[2] Exhibit 24 authenticates all DMRs referenced in this motion and memorandum (exhibits 2, 6, and 10), both 60-day notice letters referenced (exhibits 19 and 20), and the spreadsheets created to highlight the data found in the DMRs (exhibits 21, 22, and 23).

effect on April 6, 2010.  Ex. 6.

Red Cedar Surface Mine No. 1 is also subject to WVDEP's Amended Order No. 1066 which sets out the same compliance dates for Red Cedar's construction of selenium treatment facilities that Amended Order No. 47 requires for Twilight.  Ex. 7 (Order No. 1066).  As established by WVDEP correspondence to Independence, Independence has not complied with the mandated construction deadlines.  Ex. 8.

### 2.  Defendant Jacks Branch Coal Company

The third and final mine at issue is Jacks Branch's Kanawha Division Surface Mines, located in Kanawha County, West Virginia.  It is subject to the following WVSMCRA Permits: S000684, S004577, S008379, S0615750, S303790, U002985, U005584, U300197, and Z000481.  WVDEP issued WVNPDES Permit WV0093912 to Jacks Branch to regulate discharges into Bullpush Fork of Smithers Creek from Outfalls 004 and 012; into Sixmile Hollow of Hughes Creek from Outfall 005; into Hughes Creek of Bells Fork at Outfall 007; and into Hughes Creek from Outfalls 022, 033, and 034.  Ex. 9.  The permit sets the same selenium limits as those in the Independence permits at issue in this case.  As established by the DMRs that Jacks Branch submitted to WVDEP, Jacks Branch has accrued at least 609 days of violations of the selenium effluent limitations in WV/NPDES Permit WV0093912 since the selenium effluent limitations went into effect on April 5, 2010.  Ex. 10.

On April 5, 2007, WVDEP issued Amended Order No. 18, which sets the same compliance deadlines for selenium treatment facilities as the orders issued for the Independence mines.  Ex. 11.  As established by Jacks Branch's continuing violations of the selenium limits in WV/NPDES Permit WV0093912, Jacks Branch has not complied with the mandated construction deadlines.  Ex. 12.

**STANDARD OF REVIEW**

A party is entitled to summary judgment when it establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

**ARGUMENT**

Plaintiffs are entitled to summary judgment because, as a matter of law, (1) Plaintiffs have standing, (2) Plaintiffs provided the requisite notice, (3) Plaintiffs can establish that Independence and Jacks Branch are in continuing violation of the CWA and SMCRA, and (4) the undisputable evidence reveals violations of the relevant statutes, permits, and orders.

**I.      Plaintiffs Have Standing to Prosecute this Action**

Article III of the United States Constitution limits the jurisdiction of federal courts to the resolution of cases and controversies.  To establish Article III standing, a plaintiff must establish (1) injury, (2) traceability, and (3) redressability.  Amer. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 517 (4th Cir. 2003).  An organization has representational standing when (1) at least one of its members would have standing to sue in his or her own right, (2) the organization's purpose is germane to the interests that it seeks to protect, and (3) there is no need for the direct participation of the individual members in the action.  Id.

To establish injury-in-fact, "a plaintiff need only show that he used the affected area, and that he is an individual for whom the aesthetic and recreational values of the area [are] lessened" by the defendant's activity.  Piney Run Preservation Ass'n v. County Com'rs of Carroll County, MD, 268 F.3d 255, 263 (4th Cir. 2002) (internal quotation marks omitted; modification in Piney Run Preservation Ass'n).  Federal courts have noted that "Congress has identified NPDES violations, however trifling, as injurious to persons such as plaintiffs' members, who use bodies of water into which a permittee's effluents flow."  Student Public Interest Research Group of

New Jersey, Inc. v. Georgia-Pacific Corp., 615 F. Supp. 1419, 1424 (D.N.J. 1985).  A CWA

citizen-plaintiff can establish injury-in-fact by submitting evidence that the defendant has

discharged a pollutant in excess of its effluent limitations into a stream used by the plaintiff.

Friends of the Earth, Inc. v. Gaston Copper Recycling, Corp., 204 F.3d 149, 157 (4th Cir. 2000).

        Such evidence is also sufficient to satisfy the traceability prong.  The Fourth Circuit has

explained that "a plaintiff must merely show that a defendant discharges a pollutant that causes

or contributes to the kinds of injuries alleged in the specific geographic area of concern."  Id. at

161 (internal quotation marks omitted).

        Finally, injunctive relief and civil penalties can redress the injuries caused by violations

of effluent limitations.  Injunctive relief can prevent future violations and civil penalties can

deter the defendant and other polluters from future violations.  Friends of the Earth, Inc. v.

Laidlaw Environmental Services (TOC), Inc. (Laidlaw), 528 U.S. 167, 174 (2000); Gaston

Copper Recycling, 204 F.3d at 162-63.

        Plaintiffs have standing to pursue this action through at least six of their members:  James

Tawney, Diane Bady, T. Paige Dalporto, Vivian Stockman, Maria Gunnoe, and Chuck Nelson.

Together these members have standing at the affected areas, including each of the seven streams

at issue (James Creek, Trace Branch of Spruce Laurel Fork, Bull Creek of Pond Fork, Bullpush

Fork of Smithers Creek, Sixmile Hollow of Hughes Creek, Hughes Fork of Bells Creek, and

Hughes Creek) and the waters immediately downstream.  Declarations from those members are

attached to Plaintiffs' Motion for Partial Summary Judgment as Exhibits 13, 14, 15, 16, 17, and

18, respectively.

        **James Tawney**

James Tawney is a longtime member of both the West Virginia Highlands Conservancy and the Ohio Valley Environmental Coalition.  Ex. 13 at 1.  Tawney has spent a significant portion of his life living in and exploring the Gauley River watershed, of which Hughes Fork of Bells Creek is a part.  Id.  As a boy, Tawney delivered newspapers along Bells Creek and currently he fishes and picnics there.  Id. at 2.  However, Tawney will no longer eat any fish that he catches because of "my concern about water pollution including selenium."  Id.  He has picnicked with his wife as recently as spring 2010, but his enjoyment is diminished by water quality concerns, including the violation of selenium limitations in WVNPDES Permit WV0093912 issued to Defendant Jacks Branch.  Id. at 1-2.  Tawney also has serious concerns about selenium in Twentymile Creek, which is downstream from Hughes Fork of Bell Creek.  Id.

**Diane Bady**

Diane Bady is a longtime member of three of the four plaintiff organizations – the Ohio Valley Environmental Coalition, the Sierra Club, and the West Virginia Highlands Conservancy.  Ex. 14 at 1.  She first visited Hughes Creek and Smithers Creek twenty-five years ago.  Id. at 2.  She has visited each stream as often as every month for the past three to four years.  Id.  Earlier this summer, Bady went sightseeing at each of these streams, but in Hughes Creek she found few signs of the aquatic life she expects to find in healthy streams.  Id. at 2-3.  Her enjoyment was diminished by the water pollution from upstream, including "selenium coming from the mines . . . ."  Id. at 3.  Defendant Jacks Branch holds WVNPDES Permit WV0093912, which regulates discharges into Hughes Creek, Sixmile Hollow of Hughes Creek and Bullpush Fork of Smithers Creek.

**T. Paige Dalporto**

Ever since he was a child splashing around after salamanders and crawdads, T. Paige Dalporto has been a regular visitor to Smithers Creek.  Ex. 15 at 2.  Dalporto, a member of the Ohio Valley Environmental Coalition, regularly walks his dog along Smithers Creek and spends time along the creek during his routine trips to his church, which sits alongside the creek.  Id. at 2.  He has hopes that his own four-year-old son can splash around in Smithers Creek just as he did, but he is "afraid to let him near the creek" because of mining pollution, including selenium, upstream.  Id. at 2.  Dalporto would enjoy Smithers Creek more if Defendant Jacks Branch complied with the selenium limits in WVNPDES Permit WV0093912.  Id. at 1.

**Vivian Stockman**

Vivian Stockman is a long-time member of both the Ohio Valley Environmental Coalition and the West Virginia Highlands Conservancy, and she also belongs to Coal River Mountain Watch.  Ex. 16 at 1.  Several times a year in recent years, Ms. Stockman has frequently travelled along the West Fork of Pond Fork, which is just downstream of the relevant outfalls regulated by Independence's WV/NPDES Permit WV1016890:  Outfalls 008 and 015 on James Creek.  Id. at 2.  Ms. Stockman explains that she often walks along the stream when she is in the area, that the selenium pollution diminishes her enjoyment, and that she intends to return to this area in the future.  Id.

Ms. Stockman has also spent time along creeks downstream of outfalls regulated by Jacks Branch's WV/NPDES Permit WV0093912, including Hughes Creek, Smithers Creek, and Bullpush Fork of Smithers Creek.  Id. at 2-3.  At Hughes Creek, Ms. Stockman "listened to the sounds of the water and enjoyed my time there.  [However, i]t is very upsetting to me that Hughes Creek is polluted by mining operations discharging too much selenium upstream . . . ." Id.  She has also spent time enjoying the sights and sounds at a unique wooden bridge on

Bullpush Fork of Smithers Creek, though "[m]y enjoyment of the stream was harmed by the pollution including selenium coming from the mines upstream." Id. at 3.  Ms. Stockman intends to return to Smithers Creek and Hughes Creek in the future.  Id.

**Maria Gunnoe**

Boone County native Maria Gunnoe is a member of all four plaintiff organizations.  Ex. 17 at 1.  She can frequently be found along the streams of southern West Virginia fishing, hiking, and observing nature with her family.  Id.  She often uses areas of creeks downstream from Trace Branch of Spruce Laurel Fork and from Bull Creek of Pond Fork, each of which receives discharges from outfalls regulated by Independence's WV/NPDES Permit WV1017152.  The baitfish that she and her brother routinely caught and sold as children are no longer present, and Gunnoe is concerned that pollution, including selenium contamination, is to blame.  Id. at 1.  Other once-noted fishing holes now hold few fish, and Gunnoe's concerns about selenium discharges greatly diminish her enjoyment of the waters.  Id. at 3.  Ms. Gunnoe used to use Spruce Laurel Fork to wash the wild mushrooms and black cohosh she had gathered nearby, but she has ceased that practice because "I am afraid that the water in the stream is too polluted to wash them in."  Id.  Just as she has all her life, Ms. Gunnoe intends to return to the fishing holes, family cemeteries, and swimming areas of the Spruce Laurel Fork and Pond Fork watersheds in the future.  Id.

Ms. Gunnoe has also spent significant time since childhood downstream from James Creek, which receives effluent from two outfalls relevant to this action, all regulated by Independence's WV/NPDES Permit WV1016890.  Although she swam in the West Fork of Pond Fork (downstream from James Creek) as a child, she no longer does so because of pollution concerns.  Id. at 4.  She visits the area for work, to visit friends, and to visit family cemeteries,

and she intends to return in the future.  Id.  Her enjoyment is diminished greatly by impact of

mining on James Creek, including the damage from excess selenium.  Id.

**Chuck Nelson**

Chuck Nelson, a disabled coal miner and resident of Glen Daniels, West Virginia, is a

member of both the Ohio Valley Environmental Coalition and Coal River Mountain Watch.  Ex.

18 at 1.  Mr. Nelson has a deep appreciation for the importance of water quality, and he has

watched as the water quality has deteriorated near his home to the point that children no longer

play in the water as he once did.  Id.  He is well-versed in the dangers of selenium pollution, and

such pollution along Spruce Fork of the Little Coal River is one reason he no longer fishes at the

creek during his monthly trips to see his brother-in-law.  Id.  This stream is a short distance

downstream from Trace Branch of Spruce Laurel Fork, which receives effluent from three

outfalls regulated by Independence's WV/NPDES Permit WV1017152.  Mr. Nelson intends to

return to this area in the future for his regular visits to his brother-in-law.

Mr. Nelson also has deep experience in and around James Creek, which receives

discharges from outfalls regulated by Independence's WV/NPDES Permit WV1016890.  Id. at

2.  He worked at a mine at nearby Matts Creek and has been there hundreds of times, including a

recent "citizen inspection" of a mine there.  Id.  He has visited a friend along James Creek, and

about once a month he visits a place near the town of Twilight that is downstream from James

Creek.  Id.  His enjoyment at this area is diminished by water quality concerns, including

selenium pollution.  Id.  He plans to return to the area in the future.  Id.

As established by their declarations, Plaintiffs' members experience injuries-in-fact to

their recreational and aesthetic interests at all of the seven streams that receive discharges from

the outfalls subject to this motion.  Tawney, Bady, Dalporto, Stockman, Gunnoe, and Nelson all

11

describe the scenic beauty of the affected streams, and lament that their enjoyment of their time along that stream is diminished by their concerns about the effect on aquatic life of selenium discharges from the upstream mining operations of Independence and Jacks Branch.  Those individuals express reasonable concerns about selenium effects on fish, aquatic life, and waterfowl, and the resulting harm to their lives and the lives of their children.  In other words, the declarants are individuals "for whom the aesthetic and recreational values of the area will be lessened" by the repeated effluent limit violations by Independence and Jacks Branch.  See Piney Run Preservation, Ass'n, 268 F.3d at 263.

Moreover, Plaintiffs' members' injuries are fairly traceable to the Independence and Jacks Branch selenium discharges from the outfalls regulated by WV/NPDES Permits WV1016890, WV1017152, and WV0093912.  As this Court has repeatedly noted, "the relevant showing for standing is not injury to the environment, but injury to Plaintiffs."  Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC, ___ F. Supp. 2d ___, ___, 2010 WL 890972 at *5 (S.D. W. Va. Mar. 10, 2010) (quoting Ohio Valley Environmental Coalition v. Apogee Coal Co., LLC, 3:07-cv-413, Doc. # 67 at 7).  Here, Plaintiffs' members curtail their use, reluctantly cease certain uses such as fish consumption, and their enjoyment of the area is diminished because of their reasonable fears regarding selenium from the Independence and Jacks Branch upstream facilities.  See Hobet, ___ F. Supp. 2d at ___, 2010 WL 890972 at *5. ("Because the discharges of selenium at issue would be reasonably expected to cause Plaintiffs' members to curtail their use of Berry Branch and the Mud River area, thus diminishing Plaintiffs' enjoyment of the area, and because Plaintiffs' fear that selenium discharges may result in harm to themselves and wildlife is reasonable, Plaintiffs have satisfied the traceability requirement for standing.").  As the Fourth Circuit has explained, "[i]n order to satisfy the

12

traceability requirement, rather than pinpointing the origins of particular molecules, a plaintiff must merely show that a defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged in the specific geographic area of concern."  Amer. Canoe Ass'n v. Murphy Farms, 326 F.3d 505, 520 (4th Cir. 2003) (citing Gaston Copper, 204 F.3d at 161).  Selenium has been designated a toxic pollutant by the EPA, 40 C.F.R. § 401.15, and both Independence and Jacks Branch are discharging selenium in violation of their water quality based effluent limitations.  Consequently, Plaintiffs can satisfy the traceability requirement.

Finally, Plaintiffs' members' injuries can be redressed by injunctive relief and civil penalties.  Laidlaw, 528 U.S. at 174; Gaston Copper Recycling, 204 F.3d at 162-63.  Because their members have standing to bring the claims against Independence and Jacks Branch, Plaintiffs have standing as well because the requirements for organizational standing are satisfied.  Amer. Canoe Ass'n, 326 F.3d at 517.

## II.     Plaintiffs Complied with the 60-Day Notice Provisions

Before citizens may file a citizen suit under the CWA or SMCRA, they must provide prospective defendants with 60-days notice of their intent to sue.  33 U.S.C. § 1365(b)(1)(A); 30 U.S.C. § 1270(b)(1)(A).  Under the CWA, a copy of that notice must be sent to the violator, its registered agent, the Administrator of the Environmental Protection Agency ("EPA"), the Regional Administrator, and the head of the state permitting authority.  40 C.F.R. § 135.2(a)(1).  Under SMCRA, a copy of that notice must be sent to the violator, its registered agent, the Secretary of the Department of Interior, the Director of the Office of Surface Mining, the Regional Director, and the head of the state regulatory authority.  30 C.F.R. § 700.13.

Plaintiffs have satisfied the notice requirements in this case.  Exhibits 19 and 20 contain the two 60-day notices on which Plaintiffs rely.  Plaintiffs commenced this action more than 60

days after they sent their notice letters to Independence and Jacks Branch.

## III.   Independence and Jacks Branch are in Continuing Violation of the CWA and SMCRA

The CWA citizen suit provision provides that any person may commence a civil suit in federal court against any other person "who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation . . . ."  33 U.S.C. § 1365(a).  SMCRA's citizen suit similarly permits civil actions against persons "alleged to be in violation any rule regulation, order or permit issued pursuant to [SMCRA]."  30 U.S.C. § 1270(a)(2).

In Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation ("Gwaltney"), 484 U.S. 49 (1987), the Supreme Court interpreted the "alleged to be in violation" language of Section 505 of the CWA and held that it authorizes federal district courts to entertain citizen suits when plaintiffs "make a good-faith allegation of continuous or intermittent violation."  Id. at 64.  On remand, the Fourth Circuit construed Gwaltney to allow a case to proceed so long as the plaintiff ultimately proves the truth of those allegations.  Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd ("Gwaltney II"), 844 F.2d 170, 171 (4th Cir. 1988).  In other words, Section 505 of the CWA includes, as an element of the claim, the requirement that the plaintiff prove the existence of a continuing violation.  Because of the similarity in language, the same is true of SMCRA's citizen suit provision.

There are two ways in which a plaintiff can prove a continuing violation.  The Fourth Circuit has explained that:

> [c]itizen-plaintiffs may accomplish this either (1) by proving violations that continue on or after the date the complaint is filed, or (2) by adducing evidence from which a reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or sporadic violations. Intermittent or sporadic violations do not cease to be ongoing until the date when there is no real

likelihood of repetition.

Gwaltney II, 844 F.2d at 171-72.  That test is commonly referred to as the Gwaltney II test.  See e.g., Amer. Canoe Ass'n v. Murphy Farms, 412 F.3d 536, 539 (4th Cir. 2005).

Here, the first prong of the Gwaltney II test establishes ongoing violations of the selenium limits at thirteen of the outfalls relevant to this action.[3]  The DMRs created by Independence and Jacks Branch and submitted to WVDEP conclusively show numerous violations of the selenium limits as recently as June 30, 2010.  Ex. 2, 6, and 10 (DMRs for April through June 2010 for WV/NPDES Permits WV1016890, WV1017152 and WV0093912, respectively).  Spreadsheets showing the violations of each permit—broken down by month, outfall, and selenium level—are attached as Exhibits 22, 23, and 24.  The DMRs constitute binding admissions of the violations alleged in Plaintiffs' Complaint.  See, e.g., Sierra Club v. Simkins Indus., Inc., 847 F.2d 1109, 1115 n.8 (4th Cir. 1988).

The second prong of the Gwaltney II test establishes ongoing violations of the selenium limits on Outlet 037 of WV/NPDES Permit WV1017152.  Under Gwaltney II, intermittent or sporadic violations constitute ongoing violations until there is no real likelihood of repetition.  Gwaltney II, 844 F.2d at 172.  The evidence in this case shows a likelihood of continuing violations.  The Fourth Circuit instructed the district court in Gwaltney II that the relevant question is "whether the risk of defendant's continued violation had been completely eradicated" at the time the action commenced.  Id.  With regard to Outfall 037, that risk clearly remains.

---

[3] There are three outfalls that were included in Plaintiffs' Complaint that are not included in the Plaintiffs' present Motion for Partial Summary Judgment:  Two of these are Outfall 023 of Independence's WV/NPDES Permit WV1017152 and Outfall 014 of Jacks Branch's WV/NPDES Permit WV0093912.  The DMRs for these permits show "No Flow" for April, May and June 2010, which means that the permittees reported that there was no water flow detected during sampling in those months.  The third outfall not addressed in the present motion is Outfall 004 of Independence's WVNPDES Permit WV 1016890.  Plaintiffs reserve the right to establish liability at the three omitted outfalls at a later date.

As established by its DMRs, Independence violated the selenium limits on Outfall 037 of WV/NPDES Permit WV1017152 at least as recently as April 30, 2010.  Ex. 6; see also Ex. 23 (spreadsheet of WV/NPDES 1017152 violations).  The fact that there has been such a recent violation is itself enough to establish a likelihood of repeated violations, at least in the absence of strong evidence of corrective action since April 30, 2010.  See Gwaltney, 484 U.S. at 387 ("When a company has violated an effluent standard or limitation, it remains, for purposes of § 505(a), "in violation" of that standard or limitation so long as it has not put in place remedial measures that clearly eliminate the cause of the violation.") (Scalia, J., concurring in part and concurring in the judgment).   However, the evidence is even more conclusive: Independence recently applied to WVDEP to modify WV/NPDES Permit WV1017152 to include a schedule of compliance for its selenium limits.  By letter dated March 8, 2010, WVDEP denied that request, explaining that:

> During the time of the existing compliance schedule, you have not taken any on-the-ground action on this permit to implement your compliance plan or to otherwise bring selenium in your effluent into compliance with water quality standards or effluent limitations.  By your failure to undertake any action to comply during the existing compliance schedule, the WVDEP cannot conclude that events over which you have little or no control have prevented you from complying.

Ex. 8  Given that Independence has recently violated its permit, and it has not taken "any action to comply" as recently as March 2010, the risk of continuing violations has not been completely eradicated.

Consequently, the evidence shows conclusively that there is a continuing likelihood of a recurrence of violations at Outfall 037.  Gwaltney II, 844 F.2d at 171-72.  Independence is successfully treating neither its discharges nor the underlying causes of its selenium problems.  Therefore, Independence continues to violate the CWA under Gwaltney II.  See also Amer.

<u>Canoe Ass'n</u>, 412 F.3d at 539.  As for the thirteen other relevant outfalls, the DMRs created and submitted by the Defendants conclusively show repeated and ongoing violations of the three WV/NPDES permits at issue—including post-complaint violations.  Those DMRs satisfy the first prong of the Gwaltney II test.  Therefore, this Court has jurisdiction over this action.

**IV.     Independence and Jacks Branch are Liable for Hundreds of Violations of the CWA and SMCRA Since April 5, 2010**

The Independence and Jacks Branch violations of the selenium limitations of WV/NPDES Permits WV1016890, WV1017152, and WV0093912 form the basis for Plaintiffs' CWA and SMCRA claims against it.  To determine liability for permit violations, "all the court . . . is called upon to do is compare the allowable quantities listed in the permits with the available statistics on actual pollution."  <u>Student Pub. Interest Res. Gp. of N.J. v. Monsanto</u>, 600 F. Supp. 1479, 1483 (D.N.J. 1985).  Dischargers are strictly liable for their permit violations. <u>E.g.</u>, <u>Stoddard v. Western Carolina Regional Sewer Auth.</u>, 784 F.2d 1200, 1208 (4th Cir. 1986). Consequently, a violation of the requirements of a NPDES permit is automatically a violation of the Act.  <u>See</u> <u>Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.</u> (<u>Laidlaw</u>), 528 U.S. 167, 174 (2000).

Independence's WV/NPDES Permits WV1016890 and WV1017152 and Jacks Branch's WV/NPDES Permit 0093912 are attached to Plaintiffs' Motion for Partial Summary Judgment as Exhibits 1, 5 and 9, respectively.  Those documents are the source of the information in the "Units" and "Limits" columns in the spreadsheets at Exhibits 21, 22, and 23.

In response to public records requests under the West Virginia Freedom of Information Act, WVDEP provided to Plaintiffs database reports of Independence and Jacks Branch discharge monitoring reports for April 1, 2010 through June 30, 2010.  <u>See</u> Ex. 25.  DMRs constitute binding admissions and may be used to establish liability.  <u>See, e.g.</u>, <u>Sierra Club v.</u>

Simkins Indus., Inc., 847 F.2d 1109, 1115 n. 8 (4th Cir. 1988).

Independence's DMRs reveal that it has violated the selenium effluent limits of in WV/NPDES Permit WV1016890 on at least 18 instances since April 6, 2010.  See Ex. 2 and 21. A violation of an average monthly effluent limitation is a violation of the limit for each and every day of the month that the violation occurred.  See, e.g., Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd., 791 F.2d 304, 313-15 (4th Cir. 1986), vac'd on other grounds, 484 U.S. 49 (1987).  Based on that principle, Independence's DMRs reveal that it has accrued 184 days of violations of the CWA by violating the selenium limitations at two outfalls of WV/NPDES WV1016890 (Outfalls 008 and 015).  Ex. 2 and 21.  Consequently, Independence has committed more than one hundred violations of the terms and conditions of WV/NPDES Permit WV1016890, and Plaintiffs are entitled to summary judgment on liability for their First Claim for Relief and a declaratory judgment that Independence has violated the CWA in each of the instances identified above.

Based upon the same legal principles and the same type of evidence—Defendants' own DMRs—Independence has violated the selenium effluent limits of in WV/NPDES Permit WV1017152 on at least 27 instances since April 6, 2010.  Independence's DMRs reveal that it has accrued 353 days of violations of the CWA by violating the selenium limitations at five outfalls of WV/NPDES Permit WV1017152 (Outfalls 029, 031, 037, 042, and 046).  Ex. 6 and 22 (spreadsheet).

Also based upon the binding admissions found in DMRs, Defendant Jacks Branch has violated the selenium effluent limits in WV/NPDES Permit WV0093912 on at least 51 instances since April 5, 2010.  Jacks Branch's DMRs show that it has accrued 609 days of violations of the CWA by violating the selenium limitations at seven outfalls of WV/NPDES Permit WV0093912

(Outfalls 004, 005, 007, 012, 022, 033, and 034).  Ex. 10 and 23 (spreadsheet).

Likewise, Plaintiffs are entitled to summary judgment on liability related to their SMCRA claims in their Second, Fifth, and Eighth Claims for Relief.  The performance standards under SMCRA mandate that discharges from mining operations "be made in compliance with all applicable State and Federal water quality laws and regulations and with the effluent limitations for coal mining promulgated by the U.S. Environmental Protection Agency set forth in 40 C.F.R. Part 434."  40 C.F.R. §§ 816.42 & 817.42.  The regulations under the West Virginia Surface Coal Mining and Reclamation Act (the "State Act") prescribe a similar standard.  38 C.S.R. § 2-14.5.b.

Independence and Jacks Branch are liable for violations of the terms and conditions of the West Virginia Surface Mining Permit for its mines.  By operation of 38 C.S.R. § 2-33.c, that permit incorporates the performance standards prohibiting the violation of effluent limitations and material damage.  As described above, Independence and Jacks Branch are violating the performance standards that prohibit violations of effluent limitations.  See 40 C.F.R. §§ 816.42 & 817.42, 38 C.S.R. § 2-14.5.b.  Consequently, Independence and Jacks Branch committed hundreds of violations of the terms and conditions of its surface mining permits.  Accordingly, Plaintiffs are entitled to summary judgment on the issue of liability raised by their Third, Sixth and Ninth Claims for Relief and a declaratory judgment that Independence and Jacks Branch violated SMCRA and the State Act in each of the instances identified above.

Finally, Plaintiffs are entitled to summary judgment on their Second, Fifth, and Eighth Claims for Relief—claims that Independence and Jacks Branch violated the CWA by failing to comply with orders issued to them by WVDEP pursuant to the CWA.  There are three orders at issue: Amended Order No. 47, modifying Independence's WV/NPDES Permit 1016890;

Amended Order No. 1066, modifying Independence's WV/NPDES Permit 1017152; and

Amended Order No. 18, modifying Jacks Branch's WV/NPDES Permit 0093912.  Ex. 3, 7, and

11, respectively.  Each of the orders mandates that the permittee commence construction of

selenium treatment facilities by October 5, 2008 and complete the construction and installation

by April 5, 2010.  Each of these orders constitutes an "order issued by the Administrator or a

State with respect to [effluent] standard[s] or limitation[s]" for purposes of § 505(a)(1) of the

CWA.  33 U.S.C. § 1365(a)(1).  Therefore, violations of the orders are actionable under the

CWA's citizen suit provision.

Defendants have uniformly failed to comply with the orders.  WVDEP correspondence

establishes that construction of the selenium treatment facilities at Defendants' mines had not

even commenced as of at least March 8, 2010.  Ex. 4, 8, and 12.  It is a reasonable inference that

construction was not completed by the April 5, 2010 deadline less than a month later.  WVDEP's

own assessments of the facts "on the ground" constitute overwhelming evidence that the

Defendants violated the CWA by violating the WVDEP orders.  Plaintiffs are therefore entitled

to summary judgment on their Second, Fifth, and Eighth Claims for Relief.

## PERMANENT INJUNCTIVE RELIEF

To obtain a permanent injunction,

"[A] plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."

Monsanto Co. v. Geertson Seed Farms, ___ U.S. ___, ___, 2010 WL 2471057 at *11 (2010)

(quoting eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)).  Accord Christopher

Phelps & Assocs., LLC. v. Galloway, 492 F.3d 532, 543 (4th Cir. 2007) (internal quotation

marks omitted).  In general, courts should apply "traditional equitable principles" when deciding to grant injunctive relief for violations of the CWA.  Weinberger v. Romero-Barcelo, 456 U.S. 305, 313 (1982).  However, the Supreme Court specifically stated in Weinberger that a district court should "order that relief it considers necessary to secure prompt compliance with the Act." 456 U.S. at 320.  In Amoco Production Co. v. Village of Gambell, AK, the Court also stated that the district court should focus "on the underlying substantive policy the [statutory] process was designed to effect . . . ."  480 U.S. 531, 544 (1987).

Following this guidance, the court in PIRG v. Top Notch Metal Finishing Co., 26 ERC 2012, 2015 (D.N.J. 1987), stated that an effluent limitation is:

> precisely that part of the [Act] which is foremost concerned with furthering the 'underlying substantive policy' of the environmental law: the preservation of the environment and the protection of mankind and wildlife from harmful chemicals.

Because discharge standards "are at the heart of the Clean Water Act," violations of those standards "directly and critically upset the Act's objective: i.e., 'to restore and maintain the integrity of the chemical, physical, and biological integrity of the Nation's waters,' 33 U.S.C. § 1251(a)."  International Union v. Amerace Corp., Inc., 740 F. Supp. 1072, 1086 (D.N.J. 1990). "[T]he fact that defendant violated its permit by discharging more pollutants than authorized means that the restoration and enhancement of the river's water quality was inhibited and therefore, the objective of the Act was frustrated."  PIRG v. Powell Duffryn Terminals, Inc., 720 F. Supp. 1158, 1167 (D.N.J. 1989), aff'd in part and rev'd in part on other grounds, 913 F.2d 64 (3d Cir. 1990).  See also Ohio Valley Envtl. Coalition, Inc. v. Hobet Mining, LLC, ___ F. Supp. 2d ___, ___ (S.D. W. Va. 2010).

The Supreme Court has made clear that the Court's discretion with regard to injunctive relief is not boundless.  In United States v. Oakland Cannabis Buyers' Co-op., the Court stated

that

> a court sitting in equity cannot ignore the judgment of Congress, deliberately
> expressed in legislation.  A district court cannot, for example, override Congress'
> policy choice, articulated in a statute, as to what behavior should be prohibited.
> Once Congress, exercising its delegated powers, has decided the order of
> priorities in a given area, it is for the courts to enforce them when enforcement is
> sought.  Courts of equity cannot, in their discretion, reject the balance that
> Congress has struck in a statute.  Their choice (unless there is statutory language
> to the contrary) is simply whether a particular means of enforcing the statute
> should be chosen over another permissible means; their choice is not whether
> enforcement is preferable to no enforcement at all.  Consequently, when a court of
> equity exercises its discretion, it may not consider the advantages and
> disadvantages of nonenforcement of the statute, but only the advantages and
> disadvantages of employing the extraordinary remedy of injunction . . . over the
> other available methods of enforcement.

532 U.S. 483, 497-98 (2002) (internal quotation marks, citations, and footnotes omitted).

The equities in this case favor an injunction.  As shown above, Independence and Jacks

Branch are discharging selenium—a toxic pollutant—into seven different streams (via fourteen

separate outfalls) in unlawful quantities.  EPA recently issued a guidance document targeting

selenium discharges from coal mining operations as a leading cause of stream impairment in

Appalachia:

> A recent EPA study found that nine out of every 10 streams downstream of surface
> mining operations exhibit significant impacts to aquatic life. Another federal study found
> elevated levels of highly toxic and bioaccumulative selenium in streams downstream of
> valley fills. These impairments are linked to contamination of surface water supplies and
> resulting health concerns, as well as widespread impacts to stream life in downstream
> rivers and streams.

U.S. EPA, "Guidance Summary: Improving EPA Review of Appalachian Surface Coal Mining

Operations under the Clean Water Act, National Environmental Policy Act, and the

Environmental Justice Executive Order," April 1, 2010, p. 2 (footnotes omitted).  In addition, the

violation of an effluent limitation "presents strong evidence of irreparable harm."  Public Interest

Research Gp. v. Yates Indus., Inc., 757 F. Supp. 438, 454 (D.N.J. 1991).  See also Hobet Mining,

22

LLC, ___ F. Supp. 2d at ___.  Such environmental injury nearly always requires injunctive relief as a remedy.  Amoco Production Co. v. Village of Gambell, AK, 480 U.S. 531, 545 (1987).

Moreover, in a case like this, the balance of harms almost always tips in "favor [of] the issuance of an injunction to protect the environment."  Id.  That is so even where compliance with the CWA is costly.  Sen. Rep. No. 92-414, reprinted in 1972 U.S.C.C.A.N. 3668, 3711 (Congress recognized that "where industries have done nothing, their capacity to comply may be stretched to the limit"); PIRG v. Top Notch Metal Finishing Co., 26 ERC at 2016; PIRG v. CP Chemicals, 26 ERC 2017, 2022 (D.N.J. 1987); United States v. Ciampitti, 583 F. Supp. 483, 499 (D.N.J. 1984) (economic loss to polluters "is far outweighed by the benefit to the community from enjoining of activities adversely affecting the environment").  Finally, protection of the State's aquatic resources is in the public interest.  Apogee Coal Co., 555 F. Supp. 2d at 648 (concluding that an injunction compelling a mining operator to treat its noncompliant discharges was in the public interest because "the public will be served by the protection of aquatic resources, as intended by the goals and purpose of the CWA and SCMRA"); Hobet Mining, LLC, ___ F. Supp. 2d at ___.

Under Oakland Cannabis, an injunction is an appropriate remedy for the repeated violations of federal law by Independence and Jacks Branch.  Congress has prioritized the protection of the waters of the United States over the needs of industry.  Once a citizen-plaintiff has demonstrated that the defendant is in violation of the law, the party seeking injunctive relief only needs to show that there is some reasonable likelihood of future violations.  Outboard Marine Corp., 692 F. Supp. at 822.  Here, the repeated and widespread violations, the utter the failure to comply with years-old construction deadlines and the refusal to invest in effective treatment technology demonstrate a reasonable likelihood of future violations.  The Court must

assure that the Defendants comply with the CWA and SMCRA; non-enforcement is not an option.  Oakland Cannabis, 532 U.S. at 497-98.

In short, the Court should declare that Independence and Jacks Branch are in violation of the CWA and SMCRA and should issue an injunction requiring Independence and Jacks Branch to come into compliance with the Clean Water Act as soon as possible.  To that end, Plaintiffs request that, if the Court grants their motion for summary judgment, the Court schedule a hearing at its earliest convenience to determine the scope and terms of the injunction.  This Court recently has proceeded in a similar manner in Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC, Civ. No. 3:09-cv-1167.

## CIVIL PENALTIES

Once Clean Water Act liability has been established, the imposition of civil penalties is a requirement under the Act.  Section 309(d) of the CWA provides that "[a]ny person who violates [specified sections] of this title, or any permit condition or limitation implementing any of such sections in a permit issued . . . by a State . . . shall be subject to a civil penalty."  33 U.S.C. § 1319(d).  The Fourth Circuit Court of Appeals has held that this statutory language leaves "little doubt" that the assessment of a civil penalty is mandatory once liability is found under the Clean Water Act.  Stoddard v. W. Carolina Reg. Sewer Auth., 784 F.2d 1200, 1208 (4th Cir. 1986).

As set forth above, Plaintiffs have established liability on all of Plaintiffs' claims under the Clean Water Act.  Therefore, imposition of civil penalties is required and a hearing to determine the amount of such penalties is appropriate.  To that end, Plaintiffs request that, if the Court grants their motion for summary judgment, the Court schedule a hearing at its earliest convenience to determine the appropriate amount of civil penalties.

///

**CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' Motion for Partial Summary Judgment, issue appropriate declaratory and injunctive relief, impose appropriate civil penalties, and schedule a hearing to determine the scope of injunctive relief and the amount of civil penalties.

Respectfully submitted,

**/s/ Derek O. Teaney**
DEREK O. TEANEY (WVSB # 10223)
JOSEPH M. LOVETT (WVSB # 6926)
Appalachian Ctr. for the Econ. & the Envt.
P.O. Box 507
Lewisburg, WV 24901
Telephone: (304) 793-9007
Fax: (304) 645-9008
E-mail: dteaney@appalachian-center.org

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT HUNTINGTON**

**OHIO VALLEY ENVIRONMENTAL**
**COALITION, INC., et al.,**

        **Plaintiffs,**

        **v.**                            **CIVIL ACTION NO. 3:10-cv-836**

**INDEPENDENCE COAL COMPANY, INC. et al.,**

        **Defendants.**

**CERTIFICATE OF SERVICE**

        I, Derek O. Teaney, do hereby certify that, on September 2, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Robert G. McLusky
Jackson Kelly PLLC
500 Lee Street East
Suite 1600
PO Box 553
Charleston, WV 25322
*Counsel for Defendant*

                                          **/s/ Derek O. Teaney_____**
                                          DEREK O. TEANEY (WVSB # 10223)
                                          Appalachian Ctr. for the Econ. & the Envt.
                                          P.O. Box 507
                                          Lewisburg, WV 24901
                                          Telephone: (304) 793-9007
                                          Fax: (304) 645-9008
                                          E-mail: dteaney@appalachian-center.org

                                          *Counsel for Plaintiffs*