# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

# HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, INC., et al.,

        Plaintiffs,

v.                      CIVIL ACTION NO. 3:10-0836

INDEPENDENCE COAL COMPANY, INC., et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion for Summary Judgment (Doc. 73). All issues have been fully briefed, and are ripe for disposition. For the following reasons, this motion is **DENIED**.

### I. BACKGROUND

**A.**    **Background of the Current Action**

Plaintiffs[1] filed this case pursuant to the citizen suit provisions of the Federal Water Pollution Control Act ("CWA" or the "Clean Water Act") and the Surface Mining Control and Reclamation Act ("SMCRA"). Plaintiffs seek enforcement of the effluent selenium limitations under West Virginia/National Pollution Discharge Elimination System ("WV/NPDES") and West Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA") permits issued by the West Virginia

---

[1] Plaintiffs are Ohio Valley Environmental Coalition, Inc.; West Virginia Highlands Conservancy, Inc.; Coal River Mountain Watch, Inc.; and the Sierra Club.

Department of Environmental Protection ("WVDEP") to the defendants[2]. This is not the first time the Court has considered a summary judgment motion in this case. Prior to Defendants' current motion, the parties filed cross-motions for partial summary judgment. Docs. 14 & 24. The Court resolved those motions in its March 31, 2011 Memorandum Opinion and Order, in which it granted Plaintiffs' motion and denied Defendants' motion.[3] In that Opinion, the Court held that the West Virginia Environmental Quality Board ("EQB") exceeded its statutory authority by staying the effect of the selenium effluent limitations contained in Dependants' permits. As a result, the Court found that these limits have been in effect since April 2010 and, therefore, Plaintiffs were entitled to injunctive relief from the ongoing violations of these effluent limitations.

In the briefing submitted in support of their prior cross-motion for partial summary judgment, Defendants reserved the right to file the current motion, which challenges the Court's subject matter jurisdiction. In 2007, Defendants, as subsidiaries of Massey Energy Company, were the subject of an enforcement action filed by the Environmental Protection Agency ("EPA") before Judge Copenhaver in the Charleston Division of this Court. *See United States v. Massey Energy Co.*, Case No. 2:07-cv-0299 (S.D. W. Va.). A Consent Decree was entered in that case on April 9, 2008. It included both injunctive relief and civil penalties. *Consent Decree*, Doc. 73-1. Defendants contend that the Consent Decree applies to the current action, is a prior diligent prosecution by the EPA, and, therefore, bars Plaintiffs' claims currently before the Court.

---

[2] Defendants are Independence Coal Company and Jacks Branch Coal Company, subsidiaries of Massey Energy Company.

[3] As the regulatory and factual background to this case was exhaustively detailed in this recent Opinion, the Court will refrain from repeating that information here.

**B.      The Consent Decree**

The Consent Decree in the *Massey* case resolved Defendants' violations of the conditions and limitations of their WV/NPDES permits up through the date of lodging of the Consent Decree. *Consent Decree* ¶ 87.  As part of the injunctive relief provided by the Consent Decree, Defendants are subject to a tiered response scheme, which mandates the following responses by Defendants when they violate a maximum daily limit or a monthly average effluent limit contained in their permits:

> a.  First Violation Response.  Upon the first violation of a maximum daily limit or a monthly average effluent limit at any outlet, Defendants shall promptly prepare a report describing the violation, the cause of the violation, and the planned response to the violation.  This report shall be distributed to the Environmental Compliance Manager responsible at the related Facility and to appropriate management at Massey Energy Company and Massey Coal Services pursuant to procedures described in the Revised EAM.  After a first violation of a maximum daily limit or monthly average effluent limit at any outlet, Defendants shall increase monitoring and sampling efforts as appropriate.
>
> b.  Second Violation Response.  Upon the second consecutive violation of a maximum daily limit or upon the second consecutive violation of a monthly average effluent limit at any outlet, Defendants shall, in addition to the requirements in Paragraph 27(a), begin daily monitoring and sampling of discharges until the outlet returns to compliance (i.e. one compliant DMR sampling result after a consecutive violation of a maximum daily limit or one month of compliant DMR sampling results after a consecutive violation of a monthly average effluent limit) or Defendants shall hire an outside consultant and comply with the terms of Paragraph 27(d) of this Consent Decree.
>
> c.  Third Violation Response.  Upon the third consecutive violation of a maximum daily limit or upon the third consecutive violation of a monthly average effluent limit at any outlet, Defendants shall, in addition to the requirements in Paragraph 27(a) and 27(b), consult with an individual with substantial expertise in sediment control technologies and Clean Water Act compliance and implement measures recommended by that individual.
>
> d.  Subsequent Violation Response.  Upon four or more consecutive violations of a maximum daily limit or upon four or more consecutive violations of a monthly average effluent limit at any outlet, Defendants shall hire a third-party consultant to

> examine the problem. Defendants shall continue daily monitoring and sampling of discharges unless the consultant determines that daily monitoring and sampling will not resolve the noncompliance. The consultant shall prepare a report detailing: (1) the cause of the continuing violations; (2) the appropriate level of monitoring and sampling; and (3) a plan to address the continuing noncompliant discharges. Defendants shall implement the proposed plan according to the consultant's recommendations within 30 Days of receipt of the report. The consultant's report and any documentation of actions taken shall be submitted to EPA in the quarterly report required by Paragraph 43 and to appropriate management at Massey Energy Company and Massey Coal Services.

*Id.* ¶ 27. To achieve compliance, the EPA, through the Consent Decree, also assessed a $20,000,000 penalty on Defendants for permit violations that had occurred up through the date of lodging the Consent Decree. *Id.* ¶ 13. In addition, the Consent Decree prospectively provides for stipulated penalties in case of future violations by Defendants. *Id.* at *Section X*. Under this scheme, Defendants are subject to a penalty for each day they are out of compliance with the requirements under the Consent Decree.[4][5] *Id.* ¶¶ 56–57.

Plaintiffs in the current case had sought to intervene in the *Massey* action. These motions were denied without prejudice, and subsequently abandoned by the plaintiffs in light of the Consent Decree entered into by the EPA and the defendants. *Mem. Op. & Order*, *Sierra Club v. Elk Run Coal Co., Inc.*, No. 2:10-cv-0673, Doc. 49, at 24–25. The environmental organizations, in reaching this decision, relied, in part, on the assertion that the Consent Decree would not bar future citizen

---

[4] This does not mean Defendants must pay a penalty for each day they are not in compliance with the limits contained in the permits. Instead, if Defendants fail to perform a required action under the tiered response scheme, they are subject to a penalty. The Court notes that the stipulated penalties fall well below the statutory maximum civil penalty of $25,000 per day for each violation allowed under the § 1319(d) of the Clean Water Act.

[5] The Consent Decree also establishes stipulated penalties for non-compliance with NPDES Permits Limits under 40 C.F.R. Part 434, which governs technology standards applicable to discharges from coal mining point sources. *Consent Decree* ¶ 66. This is not applicable to the water quality based selenium effluent limitation standard.

actions with respect to any future violations by Defendants of their WV/NPDES permits. *Id.* In its *Memorandum in Support of Its Unopposed Motion to Enter the Consent Decree*, the United States stated that "the Decree would not prevent the United States, States or any other entities including citizens from pursuing violations that were not alleged in the Complaint or occurred after January 17, 2008, the date of lodging." *Mem.*, *United States v. Massey*, Doc. 56, at 11. The Consent Decree likewise contains language to this effect, stating: "Defendants' compliance with th[e] Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits . . . ." *Consent Decree* ¶ 90. It also contains this additional provision: "This Consent Decree does not limit or affect the rights of Defendants or of the United States against any third parties, not party to this consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants except as otherwise provided by law." *Consent Decree* ¶ 91.

## C. **Defendants' Motion**

Defendants assert that as the Consent Decree applies to "all pollutants that are regulated under effluent limits contained in Defendants' NPDES permits[,]" *Consent Decree* ¶ 25—including the permits at issue in this case—Plaintiffs' citizen suit should be barred under the diligent prosecution limitation contained in 33 U.S.C. § 1365(b)(1)(B). In particular, Defendants point to the tiered response mechanism created in the Consent Decree to address future violations of both maximum daily and monthly average effluent limits at any outlet. *Section VII*, *Consent Decree*. As the Court's March 31, 2011 Memorandum Opinion and Order concluded that the selenium effluent limitations have been in effect since April 10, 2010, Defendants contend that all violations of those limits are encompassed by the relief provided by the Consent Decree and, accordingly, Plaintiffs' action is barred. On the basis of this argument, Defendants have moved for summary judgment.

Plaintiffs contest Defendants' assertion, and instead rely on the language reserving the right for future actions addressing violations occurring subsequent to the lodging of the Consent Decree as why the current action is not barred by the EPA's diligent prosecution.

## II. DILIGENT PROSECUTION STANDARD

Under the CWA, a citizen may, pursuant to 33 U.S.C. § 1365(a), file a suit "against any person . . . who is alleged to be in violation of an effluent standard or limitation under this chapter or an order issued by the Administrator or a State with respect to such a standard or limitation." "Effluent standard or limitation" is further defined to include, *inter alia*, those standards established pursuant to section 1311 and "a permit or condition . . . issued under section 1342." 33 U.S.C. § 1365(f). Citizen suits are, however, subject to several limitations. Relevant to this case is the statutory bar to citizen suits where "the Administrator or State has commenced and is diligently prosecuting a civil or criminal action . . . to require compliance with the standard, limitation, or order" at issue in the citizen suit. 33 U.S.C. § 1365(b)(1)(B); 30 U.S.C. § 1270(b)(1)(B) (substantially similar language). "This 'statutory bar is an exception to the jurisdiction granted in subsection (a) of § 1365, and jurisdiction is normally determined as of the time of the filing of a complaint.'" *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.*, 523 F.3d 453, 456 (4th Cir. 2008) (quoting *Chesapeake Bay Found. v. Am. Recovery Co.*, 768 F.2d 207, 208 (4th Cir. 1985)).

There is a presumption of diligence as to a concurrent government action addressing the standard or limitation at issue in a citizen suit. *Piney Run*, 523 F.3d at 459 (quoting *Friends of Milwaukee's Rivers v. Milwaukee Metro. Sewerage Dist.*, 382 F.3d 743, 760 (7th Cir. 2004), *cert. denied*, 544 U.S. 913 (2005)) (other citation omitted). To nonetheless establish jurisdiction,

Plaintiffs bear the burden of proving the prosecution is not diligent.  *See Piney Run*, 523 F.3d at 459.  The burden for proving non-diligence is heavy.  "A CWA enforcement prosecution will ordinarily be considered 'diligent' if the judicial action 'is capable of requiring compliance with the Act and is in good faith calculated to do so.'" *Id.* (quoting *Friends of Milwaukee's Rivers,* 382 F.3d at 760).  In meeting their burden, a citizen-plaintiff must do more than show an agency's strategy is less aggressive than that which would be pursued by the citizen.  *Id.*

Although a court must be deferential to a government enforcement action, the deference owed is not unlimited.  "[A] diligent prosecution analysis requires more than mere acceptance at face value of the potentially self-serving statements of a [government] agency and the violator . . . ." *Friends of Milwaukee's Rivers*, 382 F.3d at 760.  As another district court explained, the Court may rely on evidence from the court docket and determine "the prospects that the [government] suit would proceed expeditiously to a final resolution." *Conn. Fund for Env't v. Contract Plating Co., Inc.*, 631 F. Supp. 1291, 1293 (D. Conn. 1986).  If the federal court finds that the government action was not capable of requiring compliance or was not in good faith calculated to do so, it should not hesitate to allow a citizen suit to proceed.  *See Friends of Milwaukee's Rivers*, 382 F.3d at 760; *see also*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 890 F. Supp. 470 (D.S.C. 1995).  However, "when presented with a consent decree . . . [a court] 'should not interpret § 1365 in a manner that would undermine the [government's] ability to reach voluntary settlements with defendants.'" *Piney Run*, 523 F.3d at 459 (quoting *Karr v. Hefner*, 475 F.3d 1192, 1198 (10th Cir. 2007)).

## III. DISCUSSION

Whether or not the Consent Decree in *Massey* constitutes a diligent prosecution has been addressed by this District Court before. In *Sierra Club v. Elk Run Coal Co., Inc.*, No. 2:10-cv-0673, Judge Copenhaver determined that the Consent Decree did not bar the plaintiffs' claims. *Mem. Op. & Order*, *Sierra Club v. Elk Run Coal Co., Inc.*, Doc. 49. The Court will examine this decision first, before turning to an analysis of the effect of the Consent Decree on the current action.[6]

**A.**     *Sierra Club v. Elk Run Coal Co.*

In a separate action in the Charleston Division of this Court, Judge Copenhaver found that the *Massey* Consent Decree did not amount to a diligent prosecution of the claims currently before him, and it therefore did not preclude the case before him. *See Mem. Op. & Order*, *Elk Run*. In reaching this conclusion, Judge Copenhaver placed significant emphasis on the United States' representation that the Consent Decree would not bar future actions regarding violations that occurred subsequent to the Consent Decree's date of lodging. *Id.* at 24. Judge Copenhaver concluded that this "indicate[d] that the EPA considered the threat of subsequent enforcement actions, including citizen suits, an important tool in securing the Massey defendants' compliance with the Clean Water Act." *Id.* at 25–27. Accordingly, Judge Copenhaver concluded that finding the Consent Decree barred the plaintiffs' action in *Elk Run*, "would not only be unjust to plaintiffs, who relied on the [opposite] interpretation in dropping their intervention requests, it would completely undermine the government's discretion in drafting the Decree's terms." *Id.* at 28.

---

[6] Plaintiffs also spend a significant section of their response to the motion for summary judgment arguing that their claims are not precluded by *res judicata* principles. As Defendants point out in their reply, this is not the basis for Defendants' motion. Instead, Defendants assert summary judgment is proper because the Consent Decree represents a "diligent prosecution" of Plaintiffs' claims. Accordingly, the Court does not address the *res judicata* argument proffered by Plaintiffs.

Defendants argue that Judge Copenhaver's ruling does not govern this Court's examination of whether the *Massey* Consent Decree constitutes a diligent prosecution of Defendant's current violations of the selenium effluent limitations.

## B. The Consent Decree Does Not Preclude Plaintiffs' Action to Enforce the Selenium Effluent Limitations

Defendants contest the application of Judge Copenhaver's conclusion in *Elk Run* to the instant action. Defendants agree that the Consent Decree contains an explicit provision stating that it does not bar future actions; however, Defendants note that this provision is qualified by the language "except as otherwise provided by law." *Consent Decree* ¶ 91. Defendants therefore argue that external sources of law that would preclude Plaintiffs' action—including the diligent prosecution bar—still apply. As the Consent Decree includes prospective injunctive relief in the form of the tiered response mechanism, Defendants contend it serves as a diligent prosecution of future violations of Defendants' WV/NPDES permits, including the selenium effluent limitations. Defendants are correct that the Consent Decree does not displace the limitations the CWA places on citizen enforcement suits. Nonetheless, this does not mean the diligent prosecution bar precludes the claims currently before this Court.

First, the Court notes that "[a] district court's interpretation of a consent decree that it has approved deserves 'substantial deference.'" *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 473 (6th Cir. 2004) (citing *Huguley v. Gen. Motors, Inc.*, 999 F.2d 142, 146 (6th Cir. 1993)). Accordingly, Judge Copenhaver's analysis of the *Massey* Consent Decree—which he approved—and his conclusion that it does not arise to a diligent prosecution of violations arising subsequent to the lodging of the Consent Decree, deserve a considerable amount of deference from this Court. For this Court to now conclude that "other law" means the diligent prosecution bar applies to the currently ongoing

selenium effluent limitations on the sole basis of the language in paragraph 91 of the Consent Decree would conflict with Judge Copenhaver's finding in *Elk Run*. The Court declines to so conclude.[7]

Defendants do draw one distinction between the action currently before this Court and that before Judge Copenhaver in *Elk Run*. In the latter, the plaintiffs are alleging violations of non-selenium limits contained in the permits; here, Plaintiffs are seeking enforcement of only the selenium effluent limitations. Defendants state that the Department of Justice ("DOJ") and the EPA have communicated to Defendants that they consider the Consent Decree to be applicable to the selenium effluent limits. Defendants assert that as the selenium effluent limitations were only recently determined to be in effect on the basis of this Court's March 31, 2011 Opinion, it is too early to determine whether or not the Consent Decree will or will not achieve compliance with the selenium effluent limitations. Therefore, a determination that the Consent Decree does not arise to diligent prosecution with respect to the selenium effluent limitations is premature. Rather than convincing this Court that it should refrain from applying *Elk Run* to this action, this distinction militates against concluding that the *Massey* Consent Decree precludes Plaintiffs' suit.

Most important to this Court's analysis is the fact that the Consent Decree in *Massey* specifically resolved "the civil claims of the United States for violations alleged in the Complaint in this action, filed on May 10, 2007, through the date of lodging." *Consent Decree* ¶ 87. While the Consent Decree does provide prospective injunctive relief in the event of future violations of the

---

[7] Defendants appear to argue that to find that this Consent Decree does not preclude Plaintiffs' suit means "that government-enforced consent decrees may never preclude citizen suits based on violations occurring anytime after their entry." *Defs.' Reply*, Doc. 88, at 4. This is not the case. Judge Copenhaver's conclusion in *Elk Run* was based on the context specific to the *Massey* Consent Decree—specifically, the United States' repeated assertion that the Consent Decree would not preclude future enforcement actions based on future violations.

-10-

WV/NPDES permits, the Court cannot imagine how the Consent Decree was, in good faith, calculated to achieve compliance with the selenium effluent limitations. The Court is not implying that the parties in *Massey* colluded to allow Defendants to avoid compliance with these limits. At the time the complaint in *Massey* was filed, May 10, 2007, the selenium limits were not in effect. In fact, the WVDEP had recently, on April 5, 2007, granted various orders extending the compliance deadline for the selenium limits to April 5, 2010, as well as setting a selenium treatment system installation deadline. *See Am. Order No. 47*, Doc. 15-3; *Order No. 1066*, Doc. 15-7; *Am. Order No. 18*, Doc. 16-3. But for this Court's recent Opinion in this action invalidating the EQB stays, Doc. 70, the selenium effluent limits would still have yet to take effect. Accordingly, the effect of the Consent Decree on future violations of the selenium effluent limitations could not have been more than a speculative consideration of the EPA or the Massey defendants at the time the Consent Decree was negotiated and lodged with the court.

This conclusion finds support in the Consent Decree. While the Consent Decree does state that it applies to "all pollutants that are regulated under effluent limits contained in Defendants' NPDES permits[,]" *Consent Decree* ¶ 25, it only specifically enumerates pollutants such as iron, TSS, aluminum, pH, and manganese.[8] In addition, the current violations of the selenium effluent limitations were not considered in the calculation of the fine imposed on Defendants in *Massey*. The Consent Decree covers only those violations that had occurred prior to the lodging of the Consent Decree. As the selenium effluent limitations were not in effect at that time, the $20,000,000 fine was not calculated to account for future violations of those limits. Therefore, the fine assessed

---

[8] In fact, in an opinion denying Defendants' motion to consolidate *Elk Run* with this action, Judge Copenhaver found this distinction particularly relevant. *Order Denying Transfer*, *Elk Run*, 2010 WL 3910187, at *1–2 (S.D. W. Va. Oct. 2, 2010).

against Defendants does not "remove or neutralize the economic incentive to violate [the selenium-related] environmental regulations." *United States v. Smithfield Foods, Inc.*, 191 F.3d 516, 529 (4th Cir. 1999) (internal quotations omitted).

Furthermore, the Consent Decree does not have a "realistic prospect" of achieving compliance with the permit limits. *Friends of Milwaukee's Rivers*, 382 F.3d at 765 (remanding to the district court to determine whether "there is a realistic prospect that violations due to the same underlying causes purportedly addressed by the [government action] will continue after the planned improvements are completed"). Instead, the Consent Decree requires little more than what is already required by the permits themselves. The Consent Decree, in fact, requires less than the orders the WVDEP issued amending Defendants' WV/NPDES permits. The WVDEP imposed the specific requirement that Defendants install selenium treatment systems, which Defendants have yet to complete. *See Am. Order No. 47*, Doc. 15-3; *Order No. 1066*, Doc. 15-7; *Am. Order No. 18*, Doc. 16-3. The Consent Decree's tiered response approach has no similarly stringent approach to achieving compliance with the selenium effluent limitations. Rather, the tiered response provisions apply only to violations of the daily and monthly limits, not to the additional treatment system requirements. The WVDEP recognized that this, at a minimum, was necessary to begin to address the consistent inability of the defendants to comply with the selenium effluent limitations.

In addition, the Court notes that the plaintiffs in *Elk Run* filed their claims as the defendants[9] have consistently violated the other effluent limitations contained in their WV/NPDES permits in spite of the *Massey* Consent Decree. The Consent Decree has therefore failed to achieve compliance with other pollutants. In light of this, the Court is even less convinced that the Consent Decree will

---

[9] Which includes Independence.

ensure Defendants comply with the selenium effluent limitations, which coal companies have had extreme difficulty complying with in West Virginia. In light of the complexity to achieving compliance with the selenium effluent limitations, the failure of the Consent Decree to achieve compliance with other effluent limitations, and the fact that the selenium effluent limitations were not even in effect at the time the Consent Decree was drafted, the Court cannot conclude that the Consent Decree "'is capable of requiring compliance with the Act and is in good faith calculated to do so.'" *Piney Run*, 523 F.3d at 459 (quoting *Friends of Milwaukee's Rivers*, 382 F.3d at 760). Lastly, the Court observes that Defendants argument that more time should be allowed prior to determining whether the Consent Decree can achieve compliance with the selenium effluent limitations does not counter Judge Copenhaver's conclusion that citizen actions for future violations—which the violations of the selenium effluent limitations without a doubt are—were not to be precluded by the diligent prosecution bar.

## C.    **Defendants' Due Process Claims**

Defendants also argue that if this Court concludes the Consent Decree is not a diligent prosecution, they may be subject to conflicting or overlapping expenditures for the same violations. This, they contend, could violate their due process rights. *See W. Union Tel. Co. v. Penn.*, 368 U.S. 71, 75 (1961) ("the holder of such property is deprived of due process of law if he is compelled to relinquish it without assurance that he will not be held liable again in another jurisdiction or in a suit brought by a claimant who is not bound by the first judgment"). The Consent Order requires little in terms of specific injunctive relief. It requires Defendants to consult with a third party to create and implement a response plan to address violations of Defendants' WV/NPDES permits. This relief goes little beyond what is required by Defendants' WV/NPDES permits, and, as detailed

above, does not include a plan or timetable for the installation of selenium treatment systems as required under the WVDEP's orders. Further, as Judge Copenhaver observed in his *Elk Run* opinion, it was abundantly clear that the *Massey* Consent Decree contemplated future citizen suits if Defendants failed to cease violating the limits contained in their WV/NPDES permits. *Mem. Op. & Order*, *Elk Run*, at 27. Accordingly, the Defendants were aware that the current situation was possible at the time they entered into the *Massey* Consent Decree. This does not arise to a deprivation of Defendants' due process rights.[10]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: May 20, 2011

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[10] Furthermore, the Court believes this argument, if it has any traction at all, is premature as it applies more to the scope of injunctive relief to be granted in this action, than as a basis for a grant of summary judgment.